UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL GIROUARD-BONO,

                Plaintiff,                 Civil Action No. 17-10888
                                                    Honorable Gershwin A. Drain
                                                    Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 9]**

Plaintiff Carol Girouard-Bono ("Girouard-Bono") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #8, 9), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Girouard-Bono is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #9**) be **DENIED**, Girouard-Bono's Motion for Summary Judgment (**Doc. #8**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.  REPORT

### A.  Background

Girouard-Bono was 49 years old at the time of her alleged onset date of January 1, 2008. (Tr. 54-55).  For DIB purposes, her date last insured was September 30, 2010.  (Tr. 54).  She completed high school but had no further education.  (Tr. 155).  Girouard-Bono has prior work history as a janitor, medical assistant, teacher's aide, office clerk, and cashier.  (Tr. 154-56, 173). She alleges disability as a result of breast cancer, back pain, arthritis, migraine headaches, shoulder pain, and anxiety.  (Tr. 54-55, 154).

After Girouard-Bono's application for DIB was denied at the initial level on March 6, 2014 (Tr. 67-70), she timely requested an administrative hearing, which was held on December 7, 2015, before ALJ Ena Weathers (Tr. 24-52).  Girouard-Bono, who was represented by attorney William Biebuyck, testified at the hearing, as did vocational expert Pauline Pegram. (*Id.*).  On February 1, 2016, the ALJ issued a written decision finding that Girouard-Bono is not disabled under the Act.  (Tr. 12-19).  On February 6, 2017, the Appeals Council denied review. (Tr. 1-3).  Girouard-Bono timely filed for judicial review of the final decision on March 21, 2017.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Girouard-Bono's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.  The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Girouard-Bono is not

disabled under the Act. At Step One, the ALJ found that Girouard-Bono did not engage in substantial gainful activity between January 1, 2008 (the alleged onset date) and September 30, 2010 (the date last insured). (Tr. 14). At Step Two, the ALJ found that she has the severe impairments of degenerative disc disease, radiculopathy, bilateral carpal tunnel syndrome, a history of asthma, and right shoulder tendinitis. (*Id.*). At Step Three, the ALJ found that Girouard-Bono's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15-16).

The ALJ then assessed Girouard-Bono's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: cannot climb ladders, ropes, or scaffolds; can frequently stoop, crouch, crawl, kneel, and climb ramps and stairs; can frequently handle and finger; can occasionally reach overhead; and cannot be exposed to concentrated vibration, dust, fumes, gases, or other pollutants. (Tr. 16).

At Step Four, the ALJ concluded, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Girouard-Bono is capable of performing her past relevant work as a medical assistant, teacher's aide, reception clerk, and storage facility rental clerk. (*Id.*). As a result, the ALJ concluded that Girouard-Bono was not disabled under the Act prior to September 30, 2010. (Tr. 19).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact

4

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.     Analysis**

In her motion, Girouard-Bono argues that the ALJ erred in failing to identify the weight assigned to the opinion of her treating physician, Matthew Sciotti, M.D., and to provide good reasons for that weight. (Doc. #8 at 11-12). The opinion at issue is contained in treatment notes from Girouard-Bono's December 18, 2009 visit to Dr. Sciotti. (Tr. 228-30). On that day, Girouard-Bono presented to Dr. Sciotti for an initial evaluation of her lower back pain and intermittent lower extremity radicular symptoms. (Tr. 230). On examination, she had moderately reduced range of motion in the cervical spine on rotation and extension, and slight pain to palpation over the cervical and lumbar paraspinal muscles. (*Id.*). Dr. Sciotti noted that x-rays of the cervical spine showed moderate disc space loss at C5-C7; x-rays of the thoracic spine showed very subtle thoracic scoliosis and mild spondylosis; and x-rays of the lumbar spine showed moderate disc space loss at L5-S1 with decreased lumbar lordosis. (Tr. 229). Dr. Sciotti diagnosed Girouard-Bono with intermittent right lumbar radiculopathy; cervical, thoracic, and lumbar osteoarthritis; and bilateral upper extremity parasthesias and numbness. (*Id.*). He then stated, in relevant part:

> I've counseled the patient of what activities to avoid including excessive bending, twisting, lifting and prolonged sitting. Patient is also advised to recline while sitting to offset physical loading of the disc. I've counseled the patient on what activities to avoid including looking up, avoidance of heavy lifting, excessive raising of arms overhead, keeping arms outstretched which causes the muscles to fatigue and cause cervical pain.

(*Id.*). In her decision, the ALJ discussed Dr. Sciotti's opinion, noting that he "set forth some restrictions" and that "those restrictions seem reasonably consistent" with the RFC finding for a reduced capacity of light work. (Tr. 18). The ALJ then noted specifically that Dr. Sciotti "indicated no heaving lifting, or prolonged sitting, or excessive bending, or excessive overhead reaching" and that "[a]ll of these restrictions are consistent with the above referenced residual functional capacity." (*Id.*). As discussed below, however, this statement is simply not accurate.

The treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(d)(2)). Those reasons "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting *Soc. Sec. Rul. ("SSR") 96-2p*, 1996 WL 374188, at *5 (July 2, 1996)).

In this case, the ALJ erred in failing to indicate what weight, if any, was given to Dr. Sciotti's opinion. As the Sixth Circuit has repeatedly stressed, it is incumbent upon the ALJ to assess what weight a treating source's opinion deserves *and to specifically articulate that weight and the "good reasons" supporting it*; when the ALJ fails to do so, remand is appropriate. *See*

*id.* at 938-39 (ordering remand when ALJ failed to assign a specific weight to a treating source's opinion or explain why part of that opinion was adopted while other parts were rejected); *Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551, 553-54 (6th Cir. 2011) ("[W]hen an ALJ violates the treating-source rule, '[w]e do not hesitate to remand,' and 'we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" (quoting *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009)); *Friend*, 375 F. App'x at 551 (an ALJ's "failure to follow the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record'") (quoting *Rogers*, 486 F.3d at 243)).

As explained in *Friend*, however, certain situations exist where a violation of the treating physician rule constitutes "harmless error" not warranting remand, including:

> if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [§ 1527(c)(2)] – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation.

*Friend*, 375 F. App'x at 551 (internal quotations omitted). Here, the Commissioner argues that the second exception applies because, reading the ALJ's decision as a whole, the ALJ "clearly credited Dr. Sciotti's opinion, as she properly found it was consistent with her RFC finding[.]" (Doc. #9 at 9). It is true that the ALJ characterized Dr. Sciotti's restrictions – of "no heavy lifting, or prolonged sitting, or excessive bending, or excessive overhead reaching" – as "consistent with the [] residual functional capacity" she ultimately adopted. (Tr. 18). In reality, however, the ALJ made no finding at all as to Girouard-Bono's capacity to sit during the work

day, nor does the RFC contain any specific limitations on sitting. (Tr. 16). Thus, it does not appear that the ALJ's RFC finding is indeed "consistent" with Dr. Sciotti's opinion that Girouard-Bono should avoid "prolonged sitting" and/or "recline while sitting to offset physical loading of the disc."[1] (Tr. 229).

The Commissioner argues more broadly, however, that Dr. Sciotti's opinion that Girouard-Bono should avoid prolonged sitting is consistent with the ALJ's finding that she retains the RFC to perform light work. (Doc. #9 at 8-9). Specifically, the Commissioner points out that light work requires lifting no more than 20 pounds a time, with frequent lifting or carrying of objects up to 10 pounds. (*Id.* at 8 (citing 20 C.F.R. § 404.1567(b)). According to the Commissioner, a "full range of light work requires standing or walking on and off for a total of approximately six hours in an eight-hour day, and sitting *may* occur intermittently during the remaining time." (*Id.* (citing *Soc. Sec. Rul. 83-10*, 1983 WL 31251, at 86 (Jan. 1, 1983) (emphasis in original)). The Commissioner argues, then, that "the inability to engage in prolonged sitting does not preclude the performance of light work, and thus, there is no inconsistency between Dr. Sciotti's opinion and the ALJ's RFC determination." (*Id.*). The Court disagrees.

The applicable regulation, cited by both Girouard-Bono and the Commissioner, provides:

> Even though the weight lifted may be very little, a job is in this [light work] category when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*. To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (emphasis added). Similarly, the Dictionary of Occupational Titles

---

[1] The record includes other evidence indicating that Girouard-Bono has treated for various back impairments that produce pain with prolonged sitting. (*E.g.,* Tr. 207, 210, 215, 218, 223).

9

("DOT") provides as follows with respect to light work:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT: Appendix C – Components of the Definition Trailer, 1991 WL 688702 (4th ed. Rev. 1991). In other words, an individual may be limited to light work in a variety of ways, some of which require more sitting than others, up to "most of the time." Here, though, in posing hypothetical questions to the vocational expert ("VE"), the ALJ did not specify whether the hypothetical individual is limited with respect to sitting, standing, or lifting (or, perhaps, that the individual is limited in all three respects but retains the capacity to push materials at a production rate pace). (Tr. 49-50). Thus, the ALJ's ultimate conclusion – that Girouard-Bono can perform the jobs of medical assistant, teacher's aide, reception clerk, and storage facility rental clerk (Tr. 18-19) – was based on VE testimony that provided no insight whatsoever as to the amount of sitting required in each of these jobs. In the absence of such testimony, and where the DOT is silent on this issue, the Court cannot determine whether Dr. Sciotti's restrictions on sitting are in fact consistent with the ALJ's RFC finding (and her ultimate conclusion that Girouard-Bono retains the RFC to perform these four specific jobs).[2] As such, remand is required for proper evaluation of Dr. Sciotti's opinion.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion

---

[2] Indeed, one of the jobs the VE testified Girouard-Bono could perform – that of reception clerk – is actually a sedentary job. (Tr. 49). Sedentary work generally requires approximately six hours of sitting in an eight-hour work day. *See Soc. Sec. Rul. 83-10*, 1983 WL 31251, at *5. Thus, it is difficult to square the ALJ's finding that Girouard-Bono can perform the reception clerk position with Dr. Sciotti's opinion that she must avoid prolonged sitting.

for Summary Judgment (**Doc. #9**) be **DENIED**, Girouard-Bono's Motion for Summary Judgment (**Doc. #8**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: December 19, 2017  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 19, 2017.

s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager